This morning with cause number 17-40525, United States of America v. Jesus Alvarez. The party is ready to proceed. Bella, you may proceed. May it please the court, Katie Shepherd for Mr. Jesus Alvarez. This case involves the warrantless and suspicionless detention of Mr. Alvarez and his 16-year-old brother at an interior immigration checkpoint. The first question for the court is how to analyze the constitutionality of that detention. In two published cases, Machuca Barrera and Jaime, the court has said that it will not scrutinize the questions that an officer asks. And instead, a duration of two minutes or so is constitutional length of a detention. But that approach has been overruled by the Supreme Court's decision in Rodriguez. I'd like to make four points about Rodriguez. In that case, the Supreme Court said that the reasonableness of a seizure depends on what the police in fact do. The court also said that an officer must always be reasonably diligent in pursuing the purpose of the stop and that diligence is measured by looking at what the officer actually did and how he did it. Third, the critical question, regardless of the sequence of events, is whether an officer's activity that is unrelated to the purpose of the stop adds time to the stop. And finally, the court rejected a de minimis exception. The Eighth Circuit had said that the delay in the case was constitutional because the delay resembled delays in previous cases that had been upheld as constitutional. And the court rejected that argument. The government had argued that a stop is reasonable as long as an officer is diligent and the overall duration of the stop is about the same as other stops made for similar purposes. And once again, the court rejected that argument, emphasizing that an officer must always be reasonably diligent and that diligence is measured by what the officer actually did. So under Rodriguez, the length of time alone does not make a stop constitutional. Instead, it matters what happened during the stop and it matters whether the officer's activity during the stop was related or unrelated to the purpose of the stop. And so here they were asking about the documents. There were some strange things about the documents. They continued some questioning. So tell us, agreeing with your framework you've laid out, how did they go beyond the bounds of questioning about immigration status? Right. So in this case, the agent did ask a couple of questions that were related to the purpose of the stop. He asked them if they were citizens, they produced some documents, and he asked the 16-year-old for further documents. But the agent also asked a lot of questions that were unrelated to citizenship. He asked them where they were going. He asked them where they lived. He asked them about their travel plans. He asked them about their luggage. Mr. Alvarez had to rummage around in his bag. Why aren't those questions relevant to whether someone's coming in the country illegally, which the officer said there was suspicion of based on the questionable documents? Well, in this case, my client and his brother presented documents saying that they were citizens. And the bus, in this case, originated in either Brownsville or Harlingen. I think the officer wasn't quite sure about that. And so the scope of the approved immigration stop under Martinez-Fuerte is a brief question or two about citizenship and possibly a request for documents. And this court has also said in Masseus that law enforcement has to possess reasonable suspicion before they can extend the duration of the stop. So you disagree that the documents were suspicious? I think that... Or raise more questions? I think that the documents gave the agent reason to ask for more documents and that that was constitutional. But the problem is that the agent didn't ask about the documents specifically. He didn't ask the 16-year-old why was his passport card deteriorated. He didn't ask them why their Social Security cards were unsigned. Instead, he asked them about travel plans. And whether someone has traveled outside the country doesn't make it more or less likely that they're a citizen. And also, under Rodriguez, it's required that the officer is always reasonably diligent in pursuing the purpose of the stop. And an officer has to take steps that would quickly confirm or dispel suspicions. And in this case, the officer asked about travel plans instead of pursuing reasonable lines of inquiry about the documents. So your view is even if wild documents are being collected and presented to the officer, the officer can only ask questions that are related to a person's citizenship status or immigration status. Correct. Can't talk about... Couldn't say it's really hot on this bus. You can't make any... Officer can't make any comment, can't talk about anything else while the documents are being produced. Well, in this case, I would say that the documents... There's no evidence that it took a certain amount of time to produce the documents. But you're not contesting that that period of time when documents were being produced was unnecessarily long. No, I'm not. What I wanted to say was that the agent and his partner got on the bus and announced that it was an immigration inspection and everybody should get out their documents. And there was testimony that Mr. Alvarez had to rummage around in his bag for bus tickets, but there was no indication that they didn't have their documents ready to go for the agent. And the agent himself testified that it took a couple of seconds to ask them if they were citizens and to get the documents. You said the agent should have been diligent. One of the ways that he could have been more diligent would have been to take the applicant, Mr. Alvarez, off the bus and run the documents, which were deemed to be suspicious, which would have delayed the trip for everyone, as opposed to proceeding in the manner that he did by asking questions and trying to expedite the stop, as opposed to this other method. So why wasn't he being diligent in pursuing the investigation the way that he was doing so? He wasn't diligent because his questions were not related to the documents. He didn't actually follow up with the documents. So he would have been more diligent by taking Mr. Alvarez off the bus, running the documents and delaying the trip for the entire bus. Yes. And that's because the actually using the computer program to run the documents on the passport card and check the Social Security number would be related to the justification for the stop. So it's not about the length of time of a stop doesn't make a stop constitutional, but it doesn't make it unconstitutional. What matters under Rodriguez is what the officer was doing during the stop and whether that was related to the initial justification for the stop. I understood that a lot of the questions that you take issue with were being asked during the time he actually had the documents in his hand and he was looking at them to review them. So he wasn't not moving forward with his investigation, but he was actually looking at the documents and as he's looking at the documents, he's asking these additional questions. So you take issue even under that scenario. I don't think that's the scenario in this case. I think the officer testified that it took him a couple of seconds to ask, are you citizens, get the documents and to review the documents. The agent has a lot of experience and testified that he's inspected 20,000 or so bus passengers. So he's able to he's very familiar with the types of documents that people provide and is able to quickly review them. And the agent did say that the passport card was suspicious because it was laminate. It was the lamination was coming off. But he didn't follow up on that by using the computer program that he testified was available to him. He did ask for additional documents and that was OK, but he also asked about travel plans, which doesn't prove whether someone's a citizen. And the agent himself testified that travel plans don't prove citizenship. You seem to be saying there was a better way to go about this investigation. Maybe you're right. But as long as the officer has suspicion and is trying to figure out whether anything is wrong, what cases say they have to engage in the most direct or best techniques which you say would be running these documents? I don't think they have to engage in the best techniques, but they have to be engaged in the purpose for the stop. And the argument about even a single question about the weather being unconstitutional, that's based in Martinez Fuerte, where the court approved of suspicionless and warrantless detentions of people at interior checkpoints only because the intrusion was so minimal and the stop was so brief. What the court said was OK was a brief question or two about citizenship and possibly a request for documents. And so if that's the framework of what's approved, even a single question can go beyond the purpose of that stop. And as the Supreme Court said in Rodriguez, an officer always has to be reasonably diligent in pursuing the purpose of the stop because the constitutionality of the stop depends on that limited duration of the stop. And why doesn't, I mean, you know, we see these cases all the time, drugs, drugs, immigration, and very commonly there's questions are asked about travel plans. There's some inconsistent responses given. So it's a common law enforcement technique to ask about travel plans because when you suspect criminal activity, because inconsistency in explaining travel plans is gives, adds to the suspicion. I think it's important to keep in mind, though, in this case that Mr. Alvarez and his 16-year-old brother were presenting documents that indicated that they were citizens. So in that case, travel plans are not related to the approved mission of the stop. If someone presented a travel visa or a border crossing card. So it all comes back to whether the documents were suspicious in the first place. Right. And I think the agent had a hunch based on the documents, but I would argue that he did not yet have reasonable suspicion to investigate generally. Without more. And the agent himself didn't testify that he had reasonable suspicion that one of them was smuggling the other based solely on the passport card. At the suppression hearing, he was asked based on the entire encounter, which included the story about where they were going and visiting their aunt. Based on all of that, he thought, and the nervousness that happened during the course of the stop, that was what gave him suspicion. So I don't think that the passport card alone gave him reasonable suspicion. And also, if he was suspicious about the passport card, he should have asked about the passport card or tried to verify it by using the computer program that he had available to him. You said the officer had a lot of experience in these types of stops, looking at these types of documents. So in the manner in which he was proceeding, perhaps he thought that was the best way to conduct the investigation. Right. I think that's possible. But because of what Martinez-Fuerte said about this stop having to be a brief question or two and a request for documents and that that minimalness of the intrusion and the brief encounter is the only reason that a warrantless and suspicionless stop of someone is approved of under the Constitution, the agent has to be very careful about what questions he's asking. And this court has to actually scrutinize what agents, what questions the agent asked. Let me ask you about the fact that this is on a bus. It's not just a typical car going through a checkpoint. Let's say they ask this defendant about his papers. Okay, fine. They move on to the other 20 passengers or 30 passengers on the bus. That takes 10 or 15 minutes to check all them. So your client's still detained during that time. And then walking back off the bus, they just say, oh, hey, can we search your bag? And he says, yes. Would that be a problem? No, I don't think that would be a problem. This court's cases have said that you can ask someone for consent without any suspicion, and that's not unconstitutional. But I think that under Rodriguez, the test is whether the off-purpose activity adds time to the stop. And in that scenario, there's no evidence of any off-purpose activity. And in this case, if the agent had finished with Mr. Alvarez and his brother faster, he could have moved on to the next person faster. He testified that sometimes when he asks someone if they're a citizen, he doesn't even ask for documents. He just moves on to the next person. So if each of them are inspected only based on citizenship and only based on the purpose of stop, the whole bus encounter would be over faster. But it depends if they're the first people asked. And okay, it goes beyond 30 seconds beyond. I mean, they were going to be there an extra 10 or 15 minutes anyway, because all these other people had to be checked. Sure, but I think that even an extra 30 seconds is unconstitutional under Martinez, Fuerte, and Rodriguez if it's not related to the purpose of the stop. So I think with this particular encounter, the fact that it's only a brief question or two, the agent testified that a typical immigration inspection lasts five to 10 seconds. So even doing the math on that by 55 people, even if you do double that for one person, then everyone's there for longer. So it's still... But in this case, you're not quarreling with the length of that encounter. You're talking about what the officer said during the encounter. That's what you're complaining about. Right. It's both. The off-purpose activity does have to add time to the stop under Rodriguez. So in this case, if the agent had been running a computer check on the social security card or the passport card, and that was happening simultaneously with him asking questions, then perhaps that would be constitutional. But the evidence is not that in this case. But he says in this case that while documents were being produced, he was asking these questions that you deem irrelevant to what he was supposed to be asking. But he says all this was occurring. I mean, my best recollection is he says that the entire encounter where we're talking, asking these questions and exchanging and presenting documents is less than two minutes. Right. It was about a minute and a half. That's what he said. Yeah. Right. And that can be unconstitutional because what's approved of in Martinez-Fuerte is a brief question or two. A minute? A minute could be unconstitutional. It depends on what the officer was doing. If the officer had a minute's worth of questions about citizenship and about the documents that someone produced, then that would be constitutional. But here, the agent didn't have a minute's worth of questions about the purpose for the stop. He asked about travel plans and he asked for bus tickets and he asked where they lived. And he asked all these other questions that weren't related to the task at hand of determining whether, in fact, these boys were actually citizens. So the analysis is more complicated than just how long it took. And I see that I'm out of time. I've reserved five minutes for rebuttal. Thank you. Thank you. May it please the court. Eileen Wilson on behalf of the government. The facts and the law support the district court's denial of Alvarez's motion to suppress. The district court correctly determined that the immigration inspection wasn't impermissibly extended, that Agent Carter developed reasonable suspicion based on his experience and training, the answers to questions, the documents produced. Also, that probable cause was established. And finally, that Alvarez's consent was legal. The immigration stop here was not unduly prolonged. During the hearing, Agent Carter broke down what questions he asked, what documents he sought, approximately how long it took, and what he was thinking. The district court, as you know, found that the minute and a half stop wasn't an impermissible amount of time under existing law and that the detention wasn't impermissibly extended. Established precedent in this circuit dictates that law enforcement can ask questions outside of the scope of a stop, provided they don't extend its duration. This court avoids scrutinizing the particular questions an agent asked. Provided, in sum, they generally relate to determining citizenship, and there are a plethora of cases on that, including Machuca Barrera, which is cited in the brief, and other cases. It's the length of the detention, not the questions asked, that makes a stop unreasonable. Just two weeks ago in Villafranca, this court reaffirmed these principles. Rodriguez did not change the law in this circuit, and is factually irrelevant here. In Rodriguez, the Supreme Court reaffirmed the rule that the Fourth Amendment tolerates certain unrelated investigations or inquiries that don't lengthen the detention, and that comports with the law in this circuit. We don't have a de minimis exception like the Eighth Circuit did. And in the facts in Rodriguez, a traffic warning was issued. So in other words, the purpose for the stop had come to a conclusion. And despite the fact that the magistrate judge and the district court judge, by adopting the report, did not find that the officer had probable cause or reasonable suspicion, the officer extended the stop for seven to eight minutes for a dog sniff. The Supreme Court reversed, and it remanded the case back to the Eighth Circuit to determine whether there was reasonable suspicion that justified detaining the defendant beyond the completion of the traffic violation. And as I said, that was not the case here. And Rodriguez doesn't hold that an officer must run certain tests or otherwise follow specific investigative criteria. What it did was recognize the Fourth Amendment tolerates these checks. And in fact, an unpublished case, Bircham, which I did not cite in my brief, 707 FedEx, excuse me, not FedEx, Federal Appendix 820, specifically says that. It says Jenkins did not violate Rodriguez by foregoing a check on Bircham's driver's license and vehicle registration. Nothing in Rodriguez requires an officer to perform such checks. The Supreme Court merely recognized that the Fourth Amendment tolerated the checks as incident to an officer's traffic mission. And in this case, the facts are substantially or significantly different than Rodriguez. Here, as the District Court found, Agent Carter developed reasonable suspicion to extend the stop. Both the testimony and the District Court's findings established the progression of events lending and leading to the development of reasonable suspicion. As everybody apparently agrees, Agent Carter had extensive training and experience in immigration matters. Over nine years, he had inspected approximately 9,000 buses for immigration reasons and 20,000 people. From the outset, he was suspicious because the brother, whom we call J.A., handed over a deteriorated passport with an unrecognizable photo. Agent Carter knows that aliens frequently use these types of documents to get through the checkpoints, so he asked for more documents. And his suspicions continued to grow. Social security cards were unsigned, and the reason that aliens or the smugglers often do that is because the passengers or the people in the cars or what have you are unable to replicate the signature. So that's why he assumed that the social security cards weren't signed. And he began to believe that there was a packet that a packet of fraudulent documents had been purchased. His suspicions were reinforced by J.A.'s change in posture and the time of day they reached the checkpoint. Again, there are cases from this court that have recognized that can be a suspicious thing, because at the shift change, the agents are distracted. And based on his training and experience and the brother's answers to the questions the document provided and the change in posture, he thought something was wrong. He thought one of them might be smuggling the other. And the district court, in fact, found that the immigration examination had not been abandoned. The progression was such, however, as he was talking to them, when they said they came from Mexico and crossed over the bridge that they were unable to name and then got on a bus, Agent Carter knew that that's often representative of the type of things body carriers do. Body carriers being the people that have the drugs taped to them. And it was only then that he started to think that the brothers could be involved with drugs. And so at that point, he asked for their consent. The record shows that it was just directed to both of them and they gave it. The district court found that based on these facts and some others, including the issue related to luggage, which was mentioned before, that the brothers did not have luggage, that the aunt was going supposedly to buy them clothes and other things, that Agent Carter had reasonable suspicion. But not only that, that there was probable cause for a search. That alone would have justified the search. But here, they went the next step by asking for the consent and giving the consent. And the district court clearly applied the proper analysis before finding it was voluntary and based on free will. And that's evidenced by the fact that the court's findings were split. The court went through the various evidences set forth in my brief and in the order, finding that various things weighed in favor of the government, other things weighed in favor of Mr. Alvarez. On the voluntariness of custodial status, he found that that weighed in favor of the government. Correct. But nobody's allowed to exit the bus while the officers are conducting this examination for documentation of citizenship, are they? No, but they're also not under arrest. And so... But they can't leave. Well, that's correct, but that's also an officer safety thing, as he testified, that people have to remain in their seats while the officer conducts these investigations for their safety. But you're correct that he would not have been able to leave. I agree with that. But the fact of the matter is he weighed all these various facts. And as this court well knows, that the evidence has to be viewed in favor of the government, and plus, particular deference has to be given to the testimony, and to a certain extent, Agent Carter's testimony itself. I mean, this court has, there are cases out there that talks about particular deference to an officer in these situations. Now, that's not to say, of course, the district court has to flat out believe them. In this recent Villanueva case, in which Judge Costa was on the panel, the district court found the exact opposite. The office, I mean, the district court granted the motion to suppress, which actually was reversed on appeal. But here, the court correctly concluded the consent was both voluntary and a product of free will. And unless the court has any additional questions, I'll yield the remainder of my time. All right, thank you, counsel. Rebuttal. I have three points. First, in Villafranco, the court did not cite Rodriguez at all. And that case also involved a traffic stop where the license check was still running. And so that's very different than what we have in this case where there was no on-purpose check happening while the officer was asking off-purpose questions. Also, I would disagree with the government that Rodriguez is irrelevant. I think Rodriguez is very relevant to this case in both traffic stops and checkpoints. In both traffic stops and checkpoints, they're constitutional because of their limited duration as measured by the purpose of the stop. And they're approved of under the Constitution because of the limits on them. And as far as the issuing of the ticket in Rodriguez, the court said, and I quote, the critical question then is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs, i.e. adds time to the stop. And finally, as far as the de minimis exception, this court didn't have a de minimis exception in traffic stop cases pre-Rodriguez, but it has created a de minimis exception in checkpoint cases in Machuca, Barrera, and Jaime by saying that the court will not scrutinize the questions the officer asks and will instead approve of stops that last about two minutes in duration. But under Rodriguez, the court has to consider what the officer actually did, which includes what questions the officer asked and whether those questions are related or unrelated to the purpose of the stop. If there are no further questions, we'd ask that you reverse the district court's denial of the motion to suppress. All right. Thank you, counsel. The court will take this matter under advisement.